# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SHARON M. THOUROT,

      Plaintiff,

      v.

MONROE CAREER &
TECHNICAL INSTITUTE, et al.,

      Defendants.

CIVIL ACTION NO. 3:14-cv-01779

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a *pro se* employment discrimination case. The plaintiff, Sharon M. Thourot, has raised sex discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against her former employer, Monroe Career & Technical Institute ("MCTI"). (Doc. 30).

MCTI has filed a motion for summary judgment. (Doc. 66). In support, as required by the local civil rules, MCTI has submitted a statement of material facts, accompanied by deposition transcripts and documentary exhibits, and a brief in support. (Doc. 67; Doc. 68; Doc. 69). Thourot has filed a brief in opposition and a response to MCTI's statement of facts, accompanied by deposition transcripts and documentary exhibits.

(Doc. 74; Doc. 75). MCTI has filed a reply brief. (Doc. 79).

The defendant's summary judgment motion is ripe for disposition. For the reasons set forth herein, the defendant's motion will be granted.

## I.  BACKGROUND

The plaintiff was employed at MCTI as an Instructional Assistant from January 2007 until August 2012.[1] MCTI is an extension of Monroe County's four school districts, providing secondary students in those districts with a tuition-free career and technical education. As an Instructional Assistant at MCTI, Thourot was charged with "provid[ing] instructional or other direct support services to students . . . alongside of the educator, who is responsible for educational programming and student progress."

MCTI contends that, over time, Thourot experienced personality conflicts with various teachers, making it difficult for her to be paired with them in the classroom; Thourot disputes this contention, suggesting that there was little or no substance to the "global concerns" expressed by these teachers. In addition, Thourot admittedly lost the confidence of the

_____

[1] As the plaintiff has noted in her response to MCTI's statement of material facts, she was suspended with pay in February 2012, and her employment was ultimately terminated in August 2012.

students due to trust and respect issues.

On January 27, 2012, Thourot was placed on a written Performance Improvement Plan ("PIP") for the remainder of the 2011–2012 school year. In its entirety, the PIP stated:

> During the current school year, it has become increasingly evident that you are having difficulties interacting with peers and students in accordance with your role as an instructional assistant as defined by your job description. Throughout the school year, you have been counseled about this unacceptable behavior and coached on ways to improve by Dr. Rushton and me. During the meeting that took place on January 18, 2012, you expressed an enthusiasm and commitment to improve.
>
> You have been made fully aware of this situation. MCTI administrative team is here to support you, however, it is important that you realize the responsibility to improve is yours alone.
>
> You are being placed on a written improvement plan for the remainder of the 2011–2012 school year and your performance will be closely monitored.
>
> ### MCTI Performance Improvement Plan
>
> Effective February 8, 2012[,] through the remainder of 2011–2012 school year for Mrs. Sharon Thorout [sic].
>
> The following improvement goals have been established:
>
> Maintaining effective communication and conducting appropriate interactions with teachers and students are two of the most important attributes of a successful instructional assistant.

When dealing with staff and students, you must exhibit professionalism. You are expected to be calm and in control of yourself in every aspect of your action with others. You need to be proactive and not reactive in nature.

Deficiency Statement: Mrs. Sharon Thorout [sic] needs to consistently demonstrate effective communication between staff and herself and students and herself. Mrs. Thorout [sic] needs to follow through on directives given by her supervisor and director with no exceptions.

Action Plan and Time Tables:

- Follow teachers' instructions without exception.

- Limit use of the computer during instructional hours to inputting special services log notes into ClassMate. This should account for no more than 20 minutes per session.

    o Exception – under direction of the teacher or an administrator you have been given a specific computer related task.

    o Computer use will be monitored through the IT Department.

- Maintain direct student contact with all learners, focusing on those with individualized education plans (IEPs).

    o Ensure specially designed instruction is followed.

    o Take special consideration of individual needs and disabilities by analyzing the student's behavior and determining whether the behavior is manifestation of the disability.

- Redirect students respectfully and succinctly.

    o Do not argue with students.

- Route all disciplinary infractions through the classroom instructor (or administration if incident takes place outside of the classroom).

    o The teacher is ultimately responsible for classroom management and how they choose to do that is up to their discretion.

- Remain on task when carrying out duties.

Mrs. Carmella-Beers will meet with you weekly to review your progress on each of the above items requiring improvement as well as conduct classroom observations to monitor your improvement.

I trust that in doing so we can guide you in becoming a successful instructional assistant contributing to the overall success of MCTI.

Improvement must occur immediately and must be maintained. If any portion of this improvement plan is violated at any time during the specified time frame, disciplinary action to include separation from MCTI may occur. A decrease in performance after successfully completing the improvement plan may result in an unsatisfactory rating and you may be dismissed from MCTI without the issuance of another warning or improvement plan.

As always, the Open Door policy is available for you to discuss any concerns. Your signature below acknowledges this discussion and does not indicate agreement or disagreement with this plan.

The PIP was signed by Thourot, her direct supervisor, Tanya Marie

Carmella-Beers, and the director of MCTI, Thomas Rushton. All three signatures are dated February 8, 2012.

In addition to the PIP itself, Thourot was provided with a handwritten table addressing each of the objectives set forth in the PIP. For each objective, the table reiterated the objective and desired performance level stated in the PIP, along with a comment advising Thourot of her current performance level. With respect to the first objective, following teachers' instructions, Thourot was advised that her current performance on this objective was not satisfactory as she had been overstepping the boundaries of the instructional assistant position. With respect to the second objective, limiting computer use, Thourot was advised that her current performance on this objective was not satisfactory as she had been observed spending extended periods of time on the computer instead of circulating among students and addressing their needs, and that she had been observed on websites unrelated to her job. With respect to the third objective, maintaining direct contact with students, Thourot was advised that she had been observed "strongly" telling an autistic student to look at her, and being argumentative with students, including those with emotional disturbances. With respect to the

fourth objective, redirecting students respectfully and succinctly, Thourot was advised that staff and students had reported that she had continued to "banter" with a child rather than stepping back and helping to de-escalate the situation. With respect to the fifth objective, routing disciplinary infractions through the classroom instructor, Thourot was advised that it had been observed that she threatened students with disciplinary referrals, thus creating an adversarial "tone," and that many of her disciplinary referrals, after investigation, had proven to be unsubstantiated. With respect to the sixth objective, remaining on task while carrying out duties, Thourot was advised that she had been observed doing personal work, texting, using the internet, and being away from her assigned location, and that she had been observed initiating personal conversation with students that interfered with their assignments.

Around the same time, Thourot prepared a "narrative" letter, dated February 1, 2012, and addressed to Rushton, but not delivered to him until February 8, 2012. In this letter, Thourot attempted to provide a narrative of purportedly discriminatory or harassing conduct she had experienced over the previous five years. The seven-page, single-spaced letter aired a variety of personal grievances against more than a dozen colleagues,

describing rude conduct and comments allegedly experienced by Thourot at unspecified times over the course of her five years at MCTI. Thourot subsequently elaborated upon the conduct described in this letter in three formal complaints.

On February 14, 2012, Thourot sent the first of three formal complaints of purportedly unlawful discrimination or harassment. At the top of this first formal complaint, Thourot indicated that the basis of her complaint was not her gender or another specified protected trait or category, but "other." Thourot sent her second and third formal complaints on February 15, 2012, and February 20, 2012. In these three written complaints, she described several incidents that occurred on unspecified dates. Altogether, she named more than twenty MCTI employees and accused them of unlawful discrimination or harassment: four male instructors, two female instructors, one male instructional assistant, six female instructional assistants, two female cafeteria monitors, two female career facilitators, a male custodian, a female learning support facilitator, a female literacy coach, a female receptionist, a female secretary, and a

female assistant director.[2]

On February 28, 2012, Thourot was placed on paid leave pending investigation of her complaints against more than twenty other MCTI employees. Upon completion of her investigation, in which she interviewed twenty-five MCTI employees and one student, Carmella-Beers prepared an investigative report, dated March 27, 2012, in which she recounted Thourot's claims of discrimination and harassment, her investigation of those claims, and her conclusion that Thourot's claims of unlawful discrimination and harassment were unfounded. With respect to the allegations concerning instructors, Carmella-Beers noted that, in each case, Thourot was reassigned.

On April 4, 2012, Rushton advised Thourot by letter that MCTI's investigation had been completed and it had determined that no incidents of harassment had been found. Rushton's letter further advised Thourot that, as a result of the nature of the circumstances surrounding the investigation and the numerous incidents that had occurred, MCTI would

---

[2] In Carmella-Beers's investigation report and in their motion papers, MCTI has characterized these formal complaints as naming twenty-five MCTI employees, but several employees were named more than once in the three complaints.

require her to undergo a medical evaluation at MCTI's expense to determine if she was medically able to return to work and perform her assigned work responsibilities. She was directed to make an appointment with Dr. Bruce Snyder, a clinical psychologist, within thirty days.

On April 6, 2012, Thourot responded through an attorney she had retained, Donald P. Russo. Attorney Russo sent Rushton a fax letter rejecting the findings of MCTI's investigation and advising that Thourot would soon be filing an EEOC complaint. Russo further informed Rushton that he had advised Thourot not to agree to be examined by Dr. Snyder, but that she would instead be evaluated by her personal health care provider.

Thereafter, the solicitor for MCTI sent three separate letters to Russo on April 23, June 4, and June 22, 2012. Because Attorney Russo did not respond to the first two letters, the solicitor's third letter advised that Thourot would be suspended without pay effective July 15, 2012, if she did not comply with MCTI's request for a medical evaluation. Attorney Russo responded to this third letter by phone call, advising that he was no longer Thourot's attorney, and stating that he would forward the solicitor's correspondence to Thourot for compliance with MCTI's request.

Thourot did not comply with MCTI's request for a medical evaluation by the July 15, 2012, deadline. As a result, she was advised by a letter from Rushton dated July 20, 2012, that she had been suspended without pay, and that Rushton would be recommending her termination effective August 7, 2012.

On August 1, 2012, Thourot filed a sex discrimination and retaliation complaint with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC").

On August 6, 2012, the Joint Operating Committee of MCTI approved Rushton's recommendation and terminated Thourot effective August 7, 2012.

On April 8, 2014, the PHRC completed its investigation and issued a report detailing its findings and its determination that the evidence obtained was insufficient to establish probable cause to credit Thourot's claims of unlawful discrimination and retaliation. On June 19, 2014, the EEOC adopted the findings of the PHRC and closed its file, issuing Thourot a right-to-sue letter.

Thourot timely filed this action under Title VII on September 12, 2014. Her second amended complaint—the operative complaint in this

matter—was filed on November 5, 2015. MCTI filed its motion for summary judgment on June 30, 2017. That motion is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.  DISCUSSION

Thourot's *pro se* second amended complaint has alleged sex discrimination and retaliation, in violation of Title VII. Based on the allegations of her second amended complaint, we have also liberally construed her complaint to assert a hostile work environment claim under Title VII. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a federal court's obligation to liberally construe the filings of *pro se* litigants).

### A. Discrimination

Title VII prohibits discrimination by an employer against an individual on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Our analysis of Title VII claims is governed by the three-step burden-shifting framework of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973): "first we ask whether the plaintiff has stated a prima facie case of discrimination or retaliation; if she has, we ask whether the employer has advanced a legitimate reason for its conduct; and finally we give the plaintiff an opportunity to prove that the employer's proffered reason is pretextual." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 325–26 (3d Cir. 2015).

At the first step,

> to establish a *prima facie* claim of discrimination under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. If the plaintiff fails to raise a genuine dispute of material fact with respect to any of the four elements, he has failed to meet his initial burden and summary judgment is properly granted for the defendant.

> If a plaintiff meets his initial burden under *McDonnell Douglas*, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the adverse employment decision. This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. At this stage, the defendant need not prove that the articulated reason actually motivated its conduct.

> If a defendant articulates a non-discriminatory reason for its actions, a plaintiff generally must submit evidence

which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to find that discrimination was more likely than not a motivating or determinative cause of termination. To discredit the employer's proffered reason for its actions, [the p]laintiff faces a difficult burden; specifically, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. In other words, the [p]laintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.

*James v. Tri-Way Metalworkers, Inc.*, 189 F. Supp. 3d 422, 434–35 (M.D. Pa. 2016) (citations, alterations, and internal quotation marks omitted).

Here, there is no dispute that Thourot is a member of a protected class (women), that she was qualified for the position she held (instructional assistant), or that she suffered an adverse employment action (termination). MCTI argues that Thourot has failed to present any evidence to support an inference of discrimination. While Thourot disputes

the accuracy of the staff and student complaints about her disruptive and erratic conduct, she does not dispute the fact that the staff and students communicated these complaints to the administration.[3] There is no dispute that she was placed on a performance improvement plan, and that, shortly thereafter, she submitted formal complaints alleging that she had been harassed by more than twenty of her co-workers. In a situation in which suspension of the numerous employees accused of misconduct clearly would have been extraordinarily disruptive, it was Thourot who was suspended *with pay* pending completion of an investigation into her extensive allegations of discrimination and harassment. In light of the results of the investigation, in which the compliance officer, Carmella-

---

[3] The record includes copious evidence of these complaints. (*See* Doc. 69, at 158 (incident report by Judith Delp dated Oct. 5, 2011); Doc. 67-1, at 66–67 (email from Ronald Cudworth dated Oct. 14, 2011); Doc. 69, at 159–60 (emails from Ronald Cudworth dated Nov. 4, 2011); *id.* at 161–62 (letter from Patricia LeCompte dated Dec. 7, 2011); *id.* at 165 (incident report by student C.P. dated Dec. 21, 2011); *id.* at 166 (incident report by student T.H. dated Dec. 21, 2011); *id.* at 167 (incident report by student K.J. dated Dec. 21, 2011); *id.* at 171 (undated complaint signed by 22 students); *id.* at 177 (email from Melanie Burnett dated Jan. 12, 2012); *id.* at 180–82 (emails from Benjamin Wenzel dated Jan. 26, 2012); Doc. 67-1, at 63 (email from Richard Courtright dated Feb. 14, 2012); *id.* at 64 (email from Kenneth Hart dated Feb. 15, 2012); *id.* at 59 (email from Benjamin Wenzel dated Feb. 16, 2012); *id.* at 60 (incident report by student Z.W. dated Feb. 16, 2012).

Beers, determined the allegation of unlawful discrimination and harassment to be unfounded, and in light of the staff and student complaints about Thourot's behavior that precipitated her PIP, Thourot was continued on paid leave and directed to submit to a psychological evaluation, at MCTI's expense, to determine whether she was medically fit to return to work. Thourot refused to do so. Three months later, she was informed that she would be suspended *without pay* if she failed to submit to a medical examination as directed before July 15, 2012. Thourot failed to do so, and on July 20, 2012, Rushton advised Thourot that she had been suspended without pay and that he would be recommending her termination. Effective August 7, 2012, she was terminated for her failure to submit to a medical examination as directed by her employer. Thourot has alluded to the numerous incidents of allegedly hostile harassment she experienced in her years of employment at MCTI, but none were related to the issue for which she was terminated. *See James*, 189 F. Supp. 3d at 437 ("[W]hile Plaintiff repeatedly focuses on the derogatory comments made by Hower, he fails to demonstrate how the comments of one co-worker can somehow create a causal inference that Matino, the decision-maker, fired Plaintiff for a discriminatory reason or that Matino's reason for

terminating Plaintiff was pretextual.").

Even assuming *arguendo* that Thourot has met her *prima facie* burden under *McDonnell Douglas*, MCTI has met its step-two burden of providing a legitimate, non-discriminatory reason for Thourot's termination—her refusal to submit to a medical evaluation to determine whether she was fit to return to work. Meanwhile, Thourot has failed at step three to present any admissible evidence whatsoever to demonstrate any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *see also James*, 189 F. Supp. 3d at 437.

Accordingly, summary judgment will be granted to MCTI with respect to Thourot's claim that she was terminated for discriminatory reasons.

### B. Hostile Work Environment

With respect to her hostile work environment claim, Thourot must show "(1) that [she] . . . suffered intentional discrimination because of [sex]; (2) the discrimination was pervasive and regular; (3) the

discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [sex] in that position; and (5) the existence of respondeat superior liability." *James*, 189 F. Supp. 3d at 438 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)). It is this last element—the existence of respondeat superior liability—that proves dispositive here.

"Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). With respect to harassment by a co-worker, "a plaintiff must demonstrate that the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment. An employer therefore may be directly liable for a co-worker's harassment if the employer failed to provide a reasonable avenue for complaint or, alternatively, if it knew or should have known of the harassment and failed to take prompt remedial action." *Bumbarger v. New Enter. Stone & Lime Co., Inc.*, 170 F. Supp. 3d 801, 838 (W.D. Pa. 2016) (citations and internal quotation marks omitted).

> In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance*, 133 S. Ct. at 2439.

Here, Thourot has alleged several incidents of alleged harassment occurring over the course of her five years of employment at MCTI. The vast majority of these incidents are conduct that might be characterized as hostile or harassing, but which the plaintiff herself admits have nothing to do with her sex. (*See, e.g.*, Doc. 69, at 30–36 (Thourot Dep. 114–40)).[4] Moreover, MCTI had promulgated a harassment policy under which staff and students could report incidents of harassment or discrimination to the

---

[4] As the Supreme Court has previously observed, "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The applicable judicial standards "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also White*, 548 U.S. at 68 ("[P]ersonality conflicts at work that generate antipathy and 'snubbing' by supervisors and co-workers are not actionable under [Title VII].") (internal quotation marks omitted).

administration. Thourot failed to report all but one of these incidents until February 2012—after she had learned of the complaints by others that led to her being issued a PIP—and once she reported the alleged harassment, MCTI undertook an investigation, interviewing more than two dozen staff members and one student who had been named as a witness. In the interim, MCTI placed Thourot on leave with pay while the investigation was ongoing. Ultimately, the investigation resulted in a determination that the allegations of discrimination and harassment were unfounded. Moreover, the one previous time that Thourot did submit a complaint, it was not couched as a discrimination or harassment complaint, but instead as an "incident report" concerning "derogatory" comments by Ronald Cudworth, and Thourot was promptly reassigned to another classroom so she would not be required to work with Cudworth again. (*See* Doc. 69, at 163–64 (incident report by Thourot dated Dec. 7, 2011)).

In light of Thourot's failure to report the alleged harassment to the administration prior to February 2012, and because we find that no reasonable jury could find that MCTI did not exercise reasonable care to prevent and correct the harassing behavior once reported, summary judgment will be granted to MCTI with respect to Thourot's claim that she

was subjected to a hostile work environment.

## C. Retaliation

With respect to her retaliation claim, Thourot must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

"If the employee establishes his *prima facie* [retaliation] claim, the *McDonnell Douglas* approach applies, shifting the burden to the employer to advance a legitimate, non-retaliatory reason for its conduct." *James*, 189 F. Supp. 3d at 441 (citing *Moore*, 461 F.3d at 342). If the employer articulates a non-discriminatory reason for its actions, "the plaintiff must then be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks omitted).

Here, Thourot contends that she was suspended without pay pending an investigation of her complaints, directed to submit to a medical evaluation before returning to work, suspended without pay after failing to submit to a medical evaluation, and then terminated, all in retaliation for submitting her administrative complaints alleging that she had been harassed by more than twenty of her co-workers. Based on the record before us, we must conclude that Thourot has satisfied her *prima facie* burden of showing that her harassment complaints were the but-for cause of the adverse employment actions that followed—her suspension with pay, the order to submit to a medical evaluation, her suspension without pay, and her ultimate termination.[5]

---

[5] We note that there is Third Circuit authority that a paid suspension pending an investigation into an employee's wrongdoing is not a qualifying adverse employment action in the substantive discrimination context under Title VII, but as we have previously recognized at the pleadings stage of this same case, that authority is inapposite in this, the retaliation context, and also because the investigation in this case involved not Thourot's own wrongful conduct, but the alleged wrongful conduct of other employees. *See Jones*, 796 F.3d at 325; *Thourot v. Monroe Career & Tech. Inst.*, Civil Action No. 3:14-1779, 2016 WL 6082238, at *5 (M.D. Pa. Oct. 17, 2016). Similarly, there is Third Circuit authority for the proposition that an order requiring an employee to submit to a psychiatric evaluation, without more, does not adversely affect an individual's employment status, but this case too is inapposite because Thourot was ultimately terminated for her failure to submit to the medical/psychiatric

*(continued on next page)*

Under *McDonnell Douglas*, MCTI has met its step-two burden of providing a legitimate, non-discriminatory reason for each of the adverse employment actions taken against Thourot. Rather than suspend more than twenty of her co-workers, which would have significantly disrupted the school's educational operations, MCTI placed Thourot on paid suspension pending completion of its investigation into her harassment claims. When her myriad harassment claims were found by MCTI to be meritless, and in light of her disruptive and erratic behavior in the several months or years prior,[6] Thourot was instructed to submit to a medical evaluation at MCTI's expense to determine her fitness to return to work. When she refused to submit to the medical evaluation as directed, she was suspended without pay and, ultimately, terminated.

Meanwhile, Thourot has failed at step three to present any admissible evidence whatsoever to demonstrate any "weaknesses,

---

evaluation as directed. *See Caver v. City of Trenton*, 420 F.3d 243, 255–56 (3d Cir. 2005). Here, it is undisputed that Thourot's submission of her harassment claims was the but-for cause of her initial suspension pending investigation of those claims, and a reasonable jury could conclude that her complaints were likewise the but-for cause of the other adverse employment actions that followed.

[6] As noted above, shortly before she submitted her harassment complaints, staff and student complaints about Thourot's behavior had led to the implementation of a performance improvement plan.

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765; *see also James*, 189 F. Supp. 3d at 437. In her opposition brief, Thourot's only argument on this point is that she attempted to satisfy MCTI's demand by offering to meet with a psychologist of her own choosing instead of the one designated by MCTI, Dr. Bruce Snyder. MCTI's solicitor expressly declined this offer in his April 23, 2012, letter, reiterating MCTI's position that Thourot must submit to an evaluation by Dr. Snyder, but inviting her to also submit a report from her personal healthcare provider for MCTI to review alongside Dr. Snyder's report. (Doc. 30-1, at 43–44). Moreover, the only evidence proffered by Thourot in support of her position is an invoice from a therapist, Dorothy Parker, LCSW, for therapy services provided in January, February, and March 2012, well before MCTI's instruction on April 4, 2012, that she submit to a medical/psychological evaluation to determine her fitness to return to work. (Doc. 75-2, at 18).[7] There is no evidence in the record before us that

---

[7] We note that the record also includes one page of treatment notes by Thourot's family physician, documenting an office visit on February 24,
*(continued on next page)*

Thourot was ever evaluated by a psychologist or any other medical provider—whether of her own choosing or not—to determine her fitness to return to work, nor is there any other evidence from which a reasonable jury might infer that the reasons given by MCTI for these adverse employment actions were pretextual.

Accordingly, summary judgment will be granted to MCTI with respect to Thourot's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, MCTI's motion for summary judgment (Doc. 66) will be granted.

An appropriate Order will follow.

Dated: March 23, 2018        *s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

---

2012, in which she complained of anxiety and depression. (Doc. 69, at 184; *see also id.* at 57–60 (Thourot Dep. 223–34)). There is no evidence that Thourot's family physician performed an evaluation of her fitness to return to work. Indeed, this office visit predated her suspension, as well as her PIP and the submission of her harassment claims to MCTI.